In the Matter of KEVIE FRANKEL, an Attorney, Respondent. ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK, Petitioner.

First Department, June 9, 1944.

*Einar Chrystie* for petitioner.

*John R. Davies* for respondent.

*Per Curiam.* An Official Referee has reported that charges of professional misconduct set forth in the petition have been established.

The evidence discloses that the respondent received from the American Surety Company three checks dated October 9, 1941, aggregating $700. These checks were in settlement of claims of Mr. and Mrs. Royal Legault and Harry F. Schuler for $100, $200 and $400, respectively. Although it had been originally agreed that the respondent was to receive one half of the proceeds of each claim, it is set forth that for the purpose of settling all three cases he consented to accept $300. The three clients who were all on friendly terms agreed to

divide the remaining $400 as follows: Mr. Schuler to take $100, Mr. Legault $100 and Mrs. Legault $200. It is thus apparent that, although his claim had been settled for $400, Mr. Schuler was willing to accept $100 with the Legaults bene-fiting by such arrangement.

On or about October 10, 1941, the three claimants were called to the office of the respondent and there signed releases and indorsed the checks drawn to their respective names. They were then informed that when the checks cleared the bank they would be paid their individual shares of the proceeds. On October 11, 1941, two of the aforesaid checks totaling $300 were paid by the bank on which they were drawn, having been cashed on behalf of the respondent by a check-cashing agency. It is conceded by the respondent that the proceeds of these checks were used for the payment of office expenses. The third check, for $400, which was to be used to pay the claimants was paid by the bank on which it was drawn, after having been deposited in an account known as '' Kevie Frankel, Special '' in the Modern Industrial Bank. It is further conceded that when this deposit was made the '' Kevie Frankel, Special '' account, as well as another account maintained by the respond-ent in the same bank, was overdrawn. The net result of the deposit of this check for $400 was that there were not sufficient funds in that bank to the credit of the respondent to pay the Legaults the $300 which was due them.

Thereafter repeated inquiries by the Legaults at the office of the respondent as to when they would receive their shares of the settlement were met by statements that the checks from the Surety Company had not yet cleared. On October 30, 1941, the Legaults called at the respondent's office. They were given checks aggregating $300, drawn on the Modern Industrial Bank, postdated to November 3, 1941, and signed '' K. Frankel, Special.'' The checks were deposited in the Yonkers Savings Bank by the Legaults but were not paid by the Modern Indus-trial Bank when presented because the signature on the checks was incorrect, the account being in the name of '' Kevie Frankel, Special '' and not '' K. Frankel, Special ''. The respondent was immediately notified by the Legaults that the checks had been returned to their bank unpaid.

On November 15, 1941, respondent wrote the Yonkers Savings Bank that, if it would inform him of the amount due, he would send a check. On November 17, 1941, the Savings Bank com-plied with this request. In a letter dated November 24, 1941, the respondent sent to the Savings Bank his check to cover the

amount of those checks he had given the Legaults and also the protest fees thereon. That letter and check were received by the Yonkers Savings Bank on the morning of November 26, 1941.

The Legaults had complained to the Bar Association on November 24, 1941, about the conduct of the respondent.

The respondent urges that, when he issued the checks totaling $300 to the Legaults, he did not know the condition of his bank account, as that was a matter which he left to the attention of his managing clerk. He further claims he was financially able to make good these checks and that as soon as he learned of the situation, on or about November 16, 1941, he sought to make full restitution to his clients. The following day he deposited $1,650 in his account and, on November 24, 1941, he sent his check to the clients' bank in Yonkers. This was done before he received any notice that complaint had been made to the Bar Association.

The record does not substantiate that defense. Although the respondent's employee sought to shield the respondent, he admitted he did not know the true condition of the bank account of the respondent. He further admitted that he did not check the bank statement each month and that he knew that there were overdrafts and shortages in the respondent's account.

In concluding his report the Official Referee said: " In my opinion the charges set forth in the petition have been fully established. The evidence establishes that both the respondent and his clerk were cognizant with the real state of his bank accounts. That they both knew that checks were being issued when there was no money in the account of the respondent to meet them. That they both knew checks were being returned for insufficient funds. That the conduct of the respondent as well as his clerk with respect to their dealings with the Legaults was deliberate and with a view only of delaying exposure until the respondent was finally able to make restitution to his clients with money obtained from other sources after a period of about six weeks."

The respondent should be suspended for three months, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions incorporated in the order.

MARTIN, P. J., TOWNLEY, GLENNON, UNTERMYER and DORE, JJ., concur.

Respondent suspended for three months.