In the Matter of JAMES J. HEALY, an Attorney, Respondent. ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK, Petitioner.

First Department, June 9, 1960.

*Raymond P. Whearty* for petitioner.

*Samuel Segal* for respondent.

*Per Curiam.*   The Referee, in his initial report and supplement thereto, has reported that charges of professional miscon-

duct, with the exception of the Cooney and Fitzgerald charges (the so-called worthless check cases), should be sustained. We find the evidence sufficient to sustain all the charges, including the Cooney and Fitzgerald charges, and hold that respondent knew or had reason to believe that covering funds were not and would not be available for payment of the checks issued. (See *Matter of Frankel,* 268 App. Div. 83.)

Other charges include neglect, misrepresentations, failure to comply with rules 4-A and 4-B of the Special Rules Regulating the Conduct of Attorneys and Counselors-at-Law of this court, and issuing worthless checks. We will make no attempt at detailed analysis of the evidence in the light of the attitude displayed by respondent towards the responsibilities of his profession.

His answer to the so-called *Serianni* case, in the face of the charge that he had grossly neglected his client's case and had wholly failed to take any steps to bring it to trial, is typical. Respondent's formal answer simply asserts that he had "made many trips to the Comptroller's Office, in addition to writing letters, to try to settle the matter, but they refused to settle the matter." Apparently respondent believes this to be an answer to the accusation.

Similarly, in the *Press* case, when charged with wholly neglecting the interest of an infant client, respondent deemed it an adequate answer to observe that the "infant plaintiff was not denied his day in court by the dismissal caused by respondent's neglect because the plaintiff was still an infant and he could institute a new action."

In the *Cooney* case, the evidence showed that four checks totaling $300, which respondent had issued to Miss Cooney in payment of salary, had been returned unpaid for insufficient funds. Respondent later made these checks good. A judgment in favor of Miss Cooney against respondent for an additional sum remains unpaid.

In the *Fitzgerald* case, respondent issued a check dated April 1, 1954, in the sum of $25 to the order of a client, one Cecil Flynn, which was cashed by one Timothy Fitzgerald, and subsequently returned twice for insufficient funds. Thereafter, on January 6, 1956, after having been notified of a complaint to the Committee on Grievances, respondent sent Flynn a substitute check for $25 which was paid. Whether or not the check in question was postdated is immaterial.

In a further supplemental report, the Referee found that respondent settled two personal injury actions, cashed the settlement checks and made no remittances to his clients until after

complaints were filed with petitioner, engaged in the practice of issuing worthless checks and commingled funds.

In the *Brown* case, which was settled for $500, some 2½ years elapsed before payment to the client was made. Meanwhile, respondent falsely represented to his client that he had not received the settlement funds, repeated this misrepresentation to an attorney whom his client engaged after two years of futile effort to secure her money, and made no move to reimburse his client until notified of the complaint. At that time respondent bought postal money orders for $250 and claimed to have sent them to Brown's attorney, but they were never received. Brown did not receive payment from the respondent until suit against him was reduced to judgment by default and execution was about to be levied.

In the *Mullen* case, which was settled for $1,000, payment was withheld from the client for one year. The evidence indicates there was no substance to the explanation advanced by respondent that he retained the $500 owing to his client in order to cover an alleged bill of $200 from a third party for nursing services.

Further, the proof shows that respondent maintained a checking account marked "special" with the Industrial Bank of Commerce. This account served as a depository for clients' as well as personal funds and checks drawn against it were returned unpaid on 53 occasions over a 16-month period because of insufficient funds. The fact that the checks were eventually paid is no defense.

The evidence adduced by respondent with reference to the charge of commingling was to the effect that it was his practice to put his clients' and his own funds indiscriminately into a bank account against which he drew checks, relying on his memory to advise him whether or not there was an adequate balance to cover the checks drawn. His memory was not aided by any memorandum of any kind or description. He made no entry on the check stub when drawing a check and it was not his practice to examine or even open statements and cancelled checks received from the bank.

In the circumstances, respondent's conduct violated the standards set for the legal profession and tended to bring the profession into disrepute.

The evidence sustains the findings of the Referee and discloses an entire lack of the proper attitude on the part of respondent towards the responsibilities of a member of the legal profession. The evidence in the Petrie, McDonald and Schiff matters has not been considered.

*Matter of Gould* (4 A D 2d 174, 175) is in point: "A disciplinary proceeding is not concerned with meting out punishment but with the question of fitness to continue on the roll of qualified attorneys. The primary consideration is the protection of the public in its reliance upon the integrity and responsibility of the legal profession. Practitioners, whether incapable or unwilling to distinguish between right and wrong, cannot be allowed to remain as members of the Bar."

The respondent should be disbarred.

BOTEIN, P. J., BREITEL, VALENTE, McNALLY and STEVENS, JJ., concur.

Respondent disbarred.